**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00588 (ABJ)** |
| **v.** | : | |
| | : | |
| **AMY SCHUBERT,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Amy Schubert to three months of home detention, a probationary term of three years, 60 hours of community service, and $500 in restitution.

## I.      Introduction

Defendant Amy Schubert and her husband, John Schubert, Jr. (Case No. 21-cr-587 (ABJ)),[1] participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' worth of property damage. The government is requesting a sentence of three months of home detention and a probationary term of three years in this case.

The government recognizes that Amy Schubert did not personally engage in or espouse violence or property destruction; however, Amy Schubert and John Schubert, Jr. scaled a wall on

---

[1] John Schubert, Jr. was charged separately, pled guilty to violating 40 U.S.C. § 5104(e)(2)(G), and is also awaiting sentencing by this Court on March 8, 2022.

the West Front of the Capitol, entered the Capitol by climbing through a broken window adjacent to the Senate Wing doors approximately two minutes after the doors and windows were initially breached, and subsequently stayed in the Capitol building for at least 34 minutes.  Amy Schubert and John Schubert, Jr. traveled into the Rotunda, Statuary Hall, and adjacent hallways. Amy Schubert also briefly entered a Congressional meeting room to take a picture of an individual holding a sign and of the rioters outside of the Capitol. On January 6, Amy Schubert sent several private texts with her cell phone about her entry into the Capitol and indicated as follows:

> 2:32 p.m. – *We're in the capital bldg.*

> 3:07 p.m. – *Yes we climbed up walls. Thru a broken window. John sin [sic] got clubbed and maced. John and I got a little maced.*

> 4:46 p.m. – *Johnny got clubbed and maced and john and I got maced in our mouths. A woman was shot 20 feet in front of use [sic]. We're ok. Got a little confrontation w/ Antifa.*

On January 8, Amy Schubert sent another text message in which she stated:

> *I'm not sure we should have pix on fb from DC event – I don't want to help government to be able to match up exactly how we looked/what we were wearing that day. I'm thinking maybe we should take them down….*

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, including John Schubert, Jr., the riot likely would have failed.

Here, the defendant's participation in a riot that actually succeeded in halting the Congressional certification combined with her behavior and actions renders the recommended sentence both "sufficient, but not greater than necessary to comply with the purposes of" the federal sentencing regime in this case. *See* 18 U.S.C. § 3553(a).

2

## II.        Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol.  *See* ECF 17 ¶¶ 1-7.  As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop, we turn to the defendant's conduct and behavior on January 6.

### *Amy Schubert's Role in the January 6, 2021, Attack on the Capitol*

On January 6, 2021, Amy Schubert entered the U.S. Capitol building at approximately 2:22 p.m., by climbing through a broken window located next to the Senate Wing Door and remained inside the Capitol for more than 30 minutes.

Prior to entering the Capitol building, Amy Schubert and John Schubert, Jr. got past barriers set up on the grounds of the West Front of the Capitol and a line of armor-clad law enforcement officers.

At approximately 2:03 p.m., law enforcement officers began to engage with members of a mob, some of whom were assaulting officers and others who were ignoring the commands of the officers. The United States Capitol Police had also set up amplification equipment that repeatedly broadcast an order for the crowd to disperse.

Image 1 depicts what the West Plaza of the Capitol Building looked like at approximately 2:20 p.m., around the time that Amy Schubert and John Schubert, Jr. traveled to reach the Senate Wing doorway and the window that they used to enter the Capitol Building.

Image 1



At approximately 2:20 p.m., a rioter breached the area of the Senate Wing doors and adjacent windows, by breaking a window and climbing through that window, as shown in Image 2. Image 2 also shows the damage being done to the window to the right of the Senate Wing doors.

Image 2



Images 3 and 4 show Amy Schubert and John Schubert, Jr., circled in red, as they entered the Capitol through a window adjacent to the Senate Wing doors at approximately 2:22 p.m.  In text messages that Amy Schubert sent on her cell phone on January 6, she stated that she and

John Schubert, Jr. climbed a wall to reach the Capitol Building, that they were maced, and

climbed through a broken window. These facts were repeated at both Amy Schubert's and John

Schubert, Jr.'s plea hearings and were agreed upon by both defendants.

Images 3 and 4





After entering the Capitol, Amy Schubert and John Schubert, Jr. walked upstairs and

entered the Rotunda, where they walked around from approximately 2:26 to 2:27 p.m., as shown

in Images 5-7.

Images 5-7







At approximately 2:27 p.m., Amy Schubert and John Schubert, Jr. entered Statuary Hall, as shown in Images 8 and 9.

Images 8 and 9





Image 10 shows Amy Schubert and John Schubert, Jr. in the Statuary Hall Connector at approximately 2:36 p.m.

Image 10



At approximately 2:42 p.m., Amy Schubert and John Schubert, Jr. traveled to the East Stairs, as shown in Image 11.

Image 11



Amy Schubert and John Schubert, Jr. ascended a stairway on the eastside of the Capitol Building and arrived at the Upper House Door area at approximately 2:43 p.m. They remained in that area for approximately ten minutes. At approximately 2:54 p.m., while in the Upper House Door area, they were ordered to leave the Capitol Building by United States Capitol Police officers. They eventually exited the Capitol through the East Front House door at approximately 2:56 p.m., as shown in Image 12.

Image 12



Amy Schubert also took photographs inside the Capitol Building, including of John Schubert, Jr. and other individuals inside the Rotunda. She briefly entered a Congressional meeting room to take a photograph of an individual holding a "Stop the Steal" sign and  the rioters outside of the Capitol, as shown in Image 13.

Image 13



In addition to entering the Capitol on January 6, Amy Schubert sent several private texts with her cell phone about her entry into the Capitol and indicated as follows:

2:32 p.m. – *We're in the capital bldg.*

3:07 p.m. – *Yes we climbed up walls. Thru a broken window. John sin [sic] got clubbed and maced. John and I got a little maced.*

4:46 p.m. – *Johnny got clubbed and maced and john and I got maced in our mouths. A woman was shot 20 feet in front of use [sic]. We're ok. Got a little confrontation w/ Antifa.*

Amy Schubert's identification of "Johnny" was a reference to John Schubert, Jr.'s adult son, who accompanied Amy Schubert and John Schubert, Jr. to the Capitol and while they were inside the Capitol.

On January 8, Amy Schubert sent another text message in which she stated:

*I'm not sure we should have pix on fb from DC event – I don't want to help government to be able to match up exactly how we looked/what we were wearing that day. I'm thinking maybe we should take them down….*

Thus, Amy Schubert contemplated removing Facebook posts about her entry into the Capitol and the government did not recover any posts or photographs from her Facebook account.

*Amy Schubert's Post-Arrest Interview*

Amy Schubert voluntarily agreed to an interview with the FBI at the time of her arrest. During the interview, Amy Schubert admitted that she entered the Capitol on January 6, 2021 without permission.

*Amy Schubert's Allocution Statement*

Prior to the sentencing, defense counsel provided Amy Schubert's allocution statement to the Court.  In her allocution, Amy Schubert states that she has changed since January 6 as a result of reading *Just Mercy* by Bryan Stevenson and *Slavery by Another Name* by Douglas A. Blackmon, which address criminal and social injustice, and self-reflection of her conduct and

perception.  She states, "*That makes me want to avoid being swept up again in any kind of 'group-think' behavior. I take responsibility for my actions on January 6th but must not let myself be persuaded too easily by misinformed or incorrect people.*" She also stated, "*I never want to disgrace this country again and I'm sorry for my mistake.*" ECF 22 – Exhibit 1.

*The Charges and Plea Agreement*

On June 24, 2021, Amy Schubert was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).  On July 26, 2021, she was arrested in Crest Hill, Illinois.  On September 20, 2021, Amy Schubert was charged by Information with the same crimes.  On December 3, 2021, she pleaded guilty to Count Four of the Information, which charged a violation of 40 U.S.C. § 5104(e)(2)(G).  In the plea agreement, Amy Schubert agreed to pay $500 in restitution.

### III.    Statutory Penalties

The defendant now faces sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G).  As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000.  As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply.  18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a).  Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct.
§ 3553(a)(6). We therefore turn to these factors.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6, 2021, is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was one of the only times in our history when the building was occupied by hostile participants. By its very nature, the attack defies comparison to other events. So, too, does the conviction this defendant now faces. Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 is not like picketing at the Capitol on any other day, without other rioters present. To portray this crime as routine unjustly downplays what actually happened.

While each defendant should be sentenced based on their individual conduct, this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances. As a person entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and likely would have smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical facts, to include: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length

12

of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition.  While these factors are neither exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

To be clear, had the defendant personally engaged in violence or destruction, he or she would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish the defendant from most other misdemeanor defendants.  The defendant's lack of violence and property destruction explains why she was charged only with, and permitted to plead to, a misdemeanor rather than felony.

While the above list is not exhaustive, a review of some of the factors is helpful in this context. For example, Amy Schubert and John Schubert, Jr. entered the Capitol building at 2:22 p.m. by first climbing up walls and climbing through a broken window located next to the Senate Wing Door.  They entered less than five minutes after other rioters first breached the Senate Wing door and adjacent window. When Amy Schubert and John Schubert, Jr. entered the Capitol through the window, there were clear signs of damage, including the broken glass on the floor. In fact, the window through which they entered the Capitol was not a normal entry point; the window had been broken by rioters.

In addition, Amy Schubert and John Schubert, Jr. remained inside the building for at least 34 minutes.  They entered the Capitol through a window adjacent to the Senate Wing doors at approximately 2:22 p.m., then walked upstairs and entered the Rotunda. They walked around the Rotunda, Statuary Hall, and Statuary Hall Connector from about 2:26 to 2:36 p.m.  Thereafter,

13

Amy Schubert and John Schubert, Jr. continued to walk through the Capitol until they arrived in the area of the Upper House Door, where they remained for approximately ten minutes.   They eventually exited the Capitol through the East Front House door at approximately 2:56 p.m.

        With respect to statements and use of social media, Amy Schubert posted about her January 6, 2021 activities in text messages and on Facebook.  On January 6, she texted that she and John Schubert, Jr. climbed walls and entered the Capitol Building through a window. She also stated that they had been maced and "Johnny" had been clubbed and maced. On January 8, she texted that she was contemplating removing images that she had posted on Facebook so that she and John Schubert, Jr. could not be identified by the government.  These messages do not appear to be public messages and the government did not recover any posts or photographs from her Facebook account.

        The government has no evidence that Amy Schubert and John Schubert, Jr. engaged in any violence or destruction of property, nor that they destroyed evidence after the riot.  But Amy Schubert and John Schubert, Jr. were firsthand witnesses to the riot at the Capitol and, by being maced, were personally involved in the riot.  Rather than allow their observations to deter either Amy Schubert or John Schubert, Jr., they entered the Capitol through a window broken by their fellow rioters and within two minutes of that breach. Amy Schubert took photographs inside the Capitol, including photographs of John Schubert, Jr. inside the Rotunda. They remained in the building for at least 34 minutes, and left only at the direction of law enforcement officers.

        In an interview with law enforcement officers following her arrest, Amy Schubert acknowledged that she entered the Capitol on January 6 and expressed remorse for her actions. In her written allocution statement provided to the Court before this sentencing, Amy Schubert stated, "*I never want to disgrace this country again and I'm sorry for my mistake.*"

Amy Schubert provided a similar statement regarding her acceptance of responsibility to the United States Probation Office. PSR ¶ 24.

Thus, the nature and circumstances of the offense, specifically the aggravating factors described above, suggest that a purely probationary sentence is inappropriate in this case and support a sentence of three months home detention and a probationary term of three years.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Amy Schubert has no criminal history. PSR ¶¶ 27-33. If the Sentencing Guidelines did apply to her offense of conviction, she would have no criminal history points. USSG § 4A1.2(c)(2).  Accordingly, she would be in Criminal History Category I.  USSG §§ 4A1.1, 5A.  Amy Schubert is unemployed. From 2000 to 2015, she was employed as a customer service representative. PSR ¶¶ 47-48. She shares monthly income of $8,451 with John Schubert, Jr., based on rental property  income, Social Security, and a pension. PSR ¶ 49. She has been in compliance with her conditions of release.  ECF 13, 14. These factors support a lenient sentence than would be the case otherwise.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds, and all that it involved, was an attack on the rule of law.  "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2]  As with the nature and circumstances of the

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at
https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20
Testimony.pdf

offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the

riot on January 6, 2021, including in misdemeanor cases.  *See United States v. Joshua Bustle and*

*Jessica Bustle*, 21-cr-238-TFH, Sent. Tr. at 3 ("As to probation, I don't think anyone should start

off in these cases with any presumption of probation. I think the presumption should be that

these offenses were an attack on our democracy and that jail time is usually -- should be

expected.").

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime

generally, and specific deterrence, or the need to protect the public from further crimes by this

defendant.  18 U.S.C. § 3553(a)(2)(B), (C); *United States v. Russell*, 600 F.3d 631, 637 (D.C.

Cir. 2010).

### General Deterrence

The demands of general deterrence, on the other hand, weigh overwhelmingly in favor of

incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

Indeed, general deterrence may be the most compelling reason to impose a sentence of

incarceration.  For the violence at the Capitol on January 6 was cultivated to interfere, and did

interfere, with one of the most important democratic processes we have: the transfer of power.

As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed.  When a mob is prepared
> to attack the Capitol to prevent our elected officials from both parties from
> performing their constitutional and statutory duty, democracy is in trouble.  The
> damage that [the defendant] and others caused that day goes way beyond the
> several-hour delay in the certification.  It is a damage that will persist in this
> country for decades.

Tr. at 69-70.  Indeed, the attack on the Capitol means "that it will be harder today than it was

seven months ago for the United States and our diplomats to convince other nations to pursue

16

democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demand deterrence.  This was not a protest.  *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.").  And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the democratic process—that their actions will have consequences.  There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Amy Schubert consciously knew what she was doing was wrong at the time it was happening, yet she did it anyway. She and John Schubert, Jr. climbed a wall to get to the Capitol and entered the Capitol through a broken window when the Capitol was under siege. The two then roamed through the Capitol for more than 30 minutes. At some point, Amy Schubert and John Schubert, Jr. were maced by law enforcement officers, but they were not deterred. Later, Amy Schubert contemplated destroying pictures that she posted to Facebook of images she captured while inside the Capitol so that she and John Schubert, Jr. could not be identified by the government. To be fair, since being approached by law enforcement Amy Schubert and John Schubert, Jr. have shown contrition but it appears that some of that remorse is based in getting arrested.  In order to deter Amy Schubert from ever engaging in this conduct again, the government believes that an adequate sentence in this case must have a significant element of detention and probation.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[3] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not necessarily become the default.[4] Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's

---

[3] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[4]  Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

The sentencing courts have already made meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous and, thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but whose conduct involved aggravating factors, merit serious consideration of active incarceration, while those who trespassed, but engaged in less aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

Amy Schubert has pleaded guilty to Count Four of the Information, charging her with parading, demonstrating or picketing in a Capitol Building, a violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A.  § 3553(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long she remained inside, the nature of any statements she made (on social media or otherwise), whether she destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences.  And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or

cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

As the number of sentences in the Capitol breach misdemeanor cases increase and the pool of comparators grows, the effect on sentences of obviously aggravating considerations has become apparent. The same is true for obviously mitigating factors, such as a defendant's efforts to prevent assaults on police and destruction of property.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court should consider the sentence imposed on *Jessica Bustle*, 21-cr-0238 (TFH) and *Andrew Bennett*, 21-cr-227 (JEB). Together, they generally present similar sentencing recommendations for individuals who entered the U.S. Capitol at later times, used Facebook to publicize their criminal conduct or livestreamed videos

of their criminal conduct, and/or initially expressed of lack of remorse but eventually entered a guilty plea at an early stage to accept responsibility. Judge Hogan sentenced Jessica Bustle to 24 months of probation and two months of home detention, and Judge Boasberg sentenced Andrew Bennett to 24 months of probation and three months of home detention.

After a review of the applicable § 3553 factors, the government believes that Amy Schubert's conduct falls into the category of cases in which sentencing courts have imposed a period of home detention and probation. Amy Schubert was a firsthand witness to the encounters by police and rioters on the West Front of the Capitol Building that was taking place when she and John Schubert, Jr. approached the Capitol Building and entered the building through a broken window, and remained in the building for at least 34 minutes. Amy Schubert also sent private text messages about her conduct and experience and posted images to Facebook. Thus, Amy Schubert's conduct is not comparable to those who obtained a purely probationary sentence.

The Court should also consider the sentence to be imposed on John Schubert, Jr.  As the Court is aware, Amy Schubert and John Schubert, Jr. are scheduled to be sentenced at the same time. Although they participated in the Capitol riot together, there are several notable differences between them. Of the two, Amy Schubert was the first one to enter the Capitol Building through the broken window and she traveled into a Congressional meeting room to obtain a photograph of an individual holding a "Stop the Steal" sign and of the rioters outside of the Capitol. Although a willing participant and follower of Amy Schubert, John Schubert, Jr. did not enter into that room and, unlike Amy Schubert, did not take photographs while inside the Capitol. He also did not send any text messages or post any pictures on Facebook about his activities at the Capitol on January 6, 2021. For these reasons, the

government is recommending three months' home detention for Amy Schubert and two months' home detention for John Schubert, Jr.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.      Conclusion

Sentencing here requires that the Court carefully balance the various factors set forth in 18 U.S.C. § 3553(a).  As detailed above, some of those factors support a sentence of incarceration and some support a more lenient sentence.  Balancing these factors above, the government recommends that this Court sentence Amy Schubert to three months of home detention, three years of probation, 60 hours of community service, and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Amy Schubert's liberty because of her behavior, while still recognizing her early acceptance of responsibility and expression of remorse.  Additionally, such a sentence recognizes that some but not all the factors enumerated in Section IV.A., above, apply to this

case.  It also allows continued monitoring of Amy Schubert in the event of future participation in similar conduct.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

By:    _/s/ Anita Eve_____
ANITA EVE
Assistant United States Attorney, Detailee
PA Bar No. 45519